Erin Rose Ronstadt, SBN 028362
Clayton Richards, SBN 029054
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
clayton@ronstadtlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Michelle Thomas, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Unum Life Insurance Company of America, an ERISA plan fiduciary, | |
| Defendant. | |

For her claims against Unum Life Insurance Company of America ("Unum" or "Defendant"), Plaintiff Carol Michelle Thomas ("Ms. Thomas" or "Plaintiff") alleges as follows:

## Jurisdiction, Venue and Parties

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2.      As an employee of the MinuteClinic, Ms. Thomas was a participant in and beneficiary of an ERISA benefit plan (the "Plan").

3.      The Plan is a purported ERISA benefit plan established and maintained by the Administrative Committee of the MinuteClinic Group of Employers (the "Committee") for the benefit of MinuteClinic employees.

4.      The MinuteClinic is the Plan Sponsor.

5.      The Committee is a Plan fiduciary and Plan administrator.

6.      Unum is a third-party claims administrator for the Plan and a Plan fiduciary.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

7.     Under the Plan, Unum insures employees of the MinuteClinic for LTD benefits pursuant to policy number 299899 002 (the "Policy").

8.     Unum has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

9.     At the time Ms. Thomas sought long-term disability ("LTD") benefits under the Plan, Unum administered claims for The Committee under the Plan, acted on behalf of the Plan, and acted as an agent of The Committee and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

10.    Ms. Thomas currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

11.    Unum has its principal place of business in the State of Maine.

12.    Unum is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13.    This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14.    Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS
### *Ms. Thomas' Disability*

15.    Ms. Thomas suffers from a number of medical conditions including lumbar degenerative disc disease, status-post 2017 lumbar spinal fusion; chronic neck and low back pain; bilateral hip and knee pain; left shoulder pain; sleep apnea; migraines; and hypotensive syncope.

16.    Ms. Thomas has sought and continues to seek extensive medical treatment for these conditions since the onset of her Disability.

-2-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

*Plan Language*

17.     Under the Plan, from March 27, 2018 (Ms. Thomas' first date of entitlement to LTD benefits) to March 27, 2020, Ms. Thomas must be Disabled from her Own Occupation.

18.     The Plan provides that an individual is Disabled from her Own Occupation when she is "limited from performing the material and substantial duties of [her] regular occupation due to her sickness or injury; and [she has] a 20% or more loss in [her] indexed monthly earnings due to the same sickness or injury."

19.     The Plan defines "Regular Occupation" as "the occupation you are routinely performing when your disability begins."

20.     The Plan defines Material and Substantial Duties as "duties that: are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified."

21.     After 24 months, or effective March 28, 2020, Ms. Thomas must be "unable to perform the duties of any gainful occupation for which [she] is reasonably fitted by education, training or experience."

22.     The Plan limits payment of claims for "disabilities due to mental illness" to 24 months of total LTD benefits.

23.     The Plan defines mental illness as "a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM, published by the American Psychiatric Association, most current as of the start of a disability."

*Ms. Thomas' Employment*

24.     Ms. Thomas worked at The MinuteClinic as a nurse practitioner beginning in April 2016.

25.     In that position, Ms. Thomas worked autonomously as a Retail Healthcare Provider.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7ᵗʰ Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

26.     The job required Ms. Thomas to perform a wide array of typical patient care services including performing physical examinations; performing and reviewing diagnostic tests; diagnosing and treating medical conditions; providing medical screenings, interventions, and counseling; and prescribing medications.

27.     Ms. Thomas had a variety of administrative duties including ordering supplies, managing inventory, and assuring adherence to safety and medical standards and protocols.

28.     The job required frequent movement and interaction with customers, sitting, writing, operating a computer or phone, and lifting weights of up to 20 pounds.

29.     Ms. Thomas last worked in any capacity on September 18, 2017.

30.     She stopped working due to her Disability.

### Ms. Thomas' LTD Benefits

31.     From the inception of Ms. Thomas's claim, Unum was aware of Ms. Thomas's chronic physical complaints.

32.     Ms. Thomas filed a claim for short-term disability benefits on September 20, 2017.

33.     In her employee statement initiating that claim, Ms. Thomas stated her last date of physical work was September 18, 2017, and that her medical condition was syncope.

34.     Ms. Thomas's treating physicians all supported her claim for benefits.

35.     In an Attending Physician Statement completed by Ms. Thomas's family physician, Dr. Jason Cheng, on September 23, 2017 and submitted to Unum, Dr. Cheng endorsed Ms. Thomas's Disability due to anxiety, depression, and pre-syncope.

36.     In an Attending Physician Statement dated October 2, 2017, Ms. Thomas's psychologist, Dr. Chelsie Reed, noted several diagnoses, but indicated certain behavioral symptoms were "due to physical health."

37.     Dr. Reed indicated she advised Ms. Thomas to stop working and noted Ms. Thomas was "fearful of working and having syncope . . . ."

-4-

38.     Regarding Ms. Thomas's physical limitations, Dr. Reed noted Ms. Thomas's "fear of passing out again and possibly hurting/landing on a patient—especially a child."

39.     Dr. Reed noted Ms. Thomas's return to work was yet to be determined "due to a lack of explination [*sic*] or end to syncop[e,] [Ms. Thomas's] anxiety cannot yet be fully managed—as well as with other current stressors. No known return date."

40.     Ms. Thomas's psychiatric nurse practitioner, Ruth Flucker, endorsed Ms. Thomas's Disability in an Attending Physician's Statement dated October 2, 2017.

41.     Unum continued to pay Ms. Thomas's STD benefits until the maximum benefit duration and transferred her claim to the Unum LTD benefits department in March 2018.

42.     Unum internal notes from March 2018 show that, "[Ms. Thomas] is noted with pain, dizziness, anxiety, migraines. [Ms. Thomas] is currently treating with multiple providers. Given [Ms. Thomas's] multitude of reports and treating providers, [Ms. Thomas's] current disabling conditions, treatment, and [restrictions and limitations]/support through the [eligibility period] [e]nd is unclear. Would recommend obtaining all outstanding records, [attending physician] opinions – discuss with [clinical consultant] for likely [clinical consultant clinical analysis]."

43.     At the outset of Ms. Thomas's claim, Unum notified her that, "[I]t is your right, or the right of your attending physician, either directly or through your representative, to request an 'independent medical examination' (IME) should opinions differ on the degree of medical impairment."

44.     Importantly, Unum's internal notes reflect Ms. Thomas had reported part-time work at the Maven Clinic on an extremely limited weekly basis of only two hours per week around this time.

45.     Unum sent a letter to Dr. Cheng dated April 3, 2018 inquiring whether Ms. Thomas could perform work with a variety of restrictions including occasionally walking, standing, or stooping; frequently sitting, reaching, handling, fingering; directing, controlling,

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

or planning the activities of others; making judgments or decisions; accepting responsibility for formulating plans, designs, practices, policies, methods, regulations, and procedures; dealing with people; and working in situations that involve interpersonal relationships.

46. In his signed reply dated April 9, 2018, Dr. Cheng concluded Ms. Thomas could not perform work within those restrictions and limitations.

47. He explained, "[Ms. Thomas] is unable to return to work due to uncontrolled depression/anxiety/[post-traumatic stress disorder] issues. Chronic back pain issues managed by pain specialist also limits work ability."

48. Despite compelling evidence of chronic physical conditions precluding Ms. Thomas from performing competitive work, in a letter dated April 19, 2018, Unum approved Ms. Thomas's LTD claim subject to the 24-month mental-nervous limitation.

49. Unum's LTD award letter stated, "We approved your benefits because you are unable to perform the material and substantial duties of your own occupation due to the symptoms related [to] your anxiety and depression[.]"

50. Unum's LTD award letter further stated, "The policy provided by your employer limits your benefits to 24 months due to your medical conditions of anxiety and depression if you continuously satisfy the definition of disability."

51. Unum's LTD award letter stated Ms. Thomas's benefits were set to expire on March 26, 2020, but benefits would continue if she "continue[d] to meet the definition of disability because of other physical conditions . . . ."

52. Responding to the April 3, 2018 Unum letter in a signed reply dated May 17, 2018, Ms. Thomas's pain specialist nurse practitioner, Allie Ernst-Amador, disagreed Ms. Thomas could perform according to the physical requirements as outlined.

53. She noted that in addition to behavioral conditions, Ms. Thomas suffered from chronic pain, lower back pain, hip pain, hip bursitis, and spondylosis.

54. During a phone call in June 2018, Ms. Thomas discussed her conditions, treatment, and daily activities with Unum's Disability Benefits Specialist, Leona Thorpe.

-6-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

55.     In addition to her psychiatric limitations, Ms. Thomas noted she suffered from chronic pain after spinal surgery, and that she was limited in her ability to lift even light objects, perform household chores, and drive even short distances.

56.     Ms. Thorpe advised Ms. Thomas that Unum would be collecting updated medical records from her attending physicians and that she would be in contact once she received that information.

57.     In August 2018, Ms. Thomas was hospitalized overnight with a seizure.

58.     On September 25, 2018, Ms. Thomas notified Unum.

59.     During a January 10, 2019 forum discussion involving Unum Disability Management Specialist, Amanda Lord; Disability Benefits Specialist, Leona M. Thorpe; Clinical Representative, Sherry Roy; and Vocational Representative, Katharine Rolph, Ms. Lord asserted, without explanation, that "there does not appear to be any support for physical conditions; as of 10/31/18 reported physical symptoms are stable."

60.     Ms. Lord's opinion is belied by the opinions of Ms. Thomas's medical providers as well as the recent medical events.

61.     In an internal Unum note dated January 28, 2019, Disability Benefits Specialist Sharon Labonte noted, "Forum supported [eligible employee's] ongoing eligibility for benefits and recommended updating medical information in 6 months. [Eligible employee] has reported physical conditions but based on the [medical records] they appear to be stable. [Disability Benefits Specialist] to monitor to ensure these do not rise to the level that they are impairing."

62.     In a March 2019 phone call to Unum, however, Ms. Thomas advised her attending physician was endorsing Disability due to physical restrictions.

63.     She notified the Unum representative she experienced significant, chronic back pain restricting her ability to sit or stand.

64.     She notified she was receiving treatment for fibromyalgia.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7ᵗʰ Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

65.     An April 30, 2019 Unum activity note reflects, "[ongoing claims management telephone call] needed then request [medical records]/[restrictions and limitations] to review at forum for [behavioral health]/physical impairment."

66.     During a phone call with Disability Benefits Specialist, Krista Ryall, on that date, Ms. Thomas reported that her chronic back pain and fatigue were "the most restricting," and that she was "miserable in pain."

67.     Ms. Ryall stated, "[T]here was not support that physical condition rose to a level precluding own occ[upation] demands" based on a January 2019 medical review, but that Unum would "continue to monitor this."

68.     Ms. Ryall's note of the conversation states, "[Disability Benefits Specialist] explained that if [eligible employee] continues to report the physical conditions are impairing, [Unum] would not be able to complete [the] full review until closer to 3/2020 based on updated [medical records] around that time."

69.     On June 18, 2019, Ms. Ryall, contacted Ms. Thomas to collect updated information regarding her medical treatment, medications, work restrictions, daily activities, and income.

70.     When Ms. Ryall asked about current symptoms, Ms. Thomas explained she suffers from severe lower back pain, fatigue, dizziness, daily nausea, migraine headaches, anxiety, and depression.

71.     Ms. Ryall recommended obtaining updated medical records and restrictions and limitations from Ms. Thomas's providers.

72.     After Unum investigated Ms. Thomas's social media profiles and found a reference to part-time work, Ms. Ryall contacted Ms. Thomas again on June 20, 2019.

73.     During that conversation, Ms. Thomas stated she worked three hours per week online with Maven Healthcare, which "[s]he reported[ ]from the beginning of LTD"; that she performed that job from the couch; and that she scheduled the job around when she was feeling better.

-8-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ  85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

74.     Ms. Thomas reported earning only $500 per month and agreed to provide her most recent IRS form 1099 "to confirm no change in earnings."

75.     That same afternoon, Ms. Thomas submitted her 2018 IRS form 1099 to Unum via email, which reflected only $6,733.34 in total "nonemployee compensation" for the whole year.

76.     Nevertheless, that same day, Ms. Ryall referred Ms. Thomas's claims to Unum's Special Investigations Unit ("SIU"), citing Ms. Thomas's minimal, accommodated work for Maven Clinic.

77.     In her SIU referral, Ms. Ryall cited Ms. Thomas's social media accounts for evidence she was engaging in part-time work, but omitted or concealed the fact that Unum was fully aware of this work and had been for over a year.

78.     Ms. Ryall also omitted or concealed the fact that Ms. Thomas had already submitted the tax documents proving that not only was the work activity de minimus, but that her earnings would not even result in an off-set under the LTD Policy.

79.     The next day, a Unum SIU representative acknowledged the referral "for suspected fraud."

80.     According to an internal Partial Earnings Review dated June 25, 2019, Unum was aware Ms. Thomas's earnings at the Maven Clinic would not impact her benefits.

81.     Still, Unum allowed the SIU investigation to move forward.

82.     In early September 2019, Unum referred Ms. Thomas's claim to an outside risk management vendor, HUB Enterprises, to schedule a personal visit.

83.     In a September 5, 2019 internal note, a Unum representative asserted the "[a]vailable medical would not preclude the [eligible employee] from her physical occ[upational] demands, it is unclear if she remains precluded from her cognitive occ[upational] demands."

84.     The Unum representative requested the HUB investigator inquire about Ms. Thomas's part-time work, her daily activities, her participation in businesses, and her return-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

to-work plan; observe her "cognitive presentation"; and procure confirmation of her 2017 tax filing extension.

85.     On September 11, 2019, Ms. Thomas experienced another syncopal episode causing her to be taken to the emergency room where x-rays revealed a lumbar compression fracture at L2.

86.     The incident only exacerbated Ms. Thomas's chronic back pain and illustrated that her syncopal episodes had not fully resolved.

87.     HUB investigator Steve Sousa conducted an in-person interview of Ms. Thomas at her home on September 14, 2019.

88.     During that interview, despite acknowledging part-time work for three days per week, Ms. Thomas indicated "[s]he has not attempted to seek employment in an alternative field, due to the constant pain in her lower back which radiates down her left leg into her left foot causing it to go numb, as well as the constant pain in her upper back, along with constant fatigue, difficulty breathing, sleeplessness, depression, anxiety, chest pains and migraine headaches."

89.     In a letter dated September 26, 2019, Dr. Reed explained that Ms. Thomas's behavioral condition had improved with reduced anxiety symptoms and well-managed depression.

90.     Regarding Ms. Thomas's physical condition, however, Dr. Reed stated, "[Ms. Thomas] has been managing pain, though continues to lack significant improvement in outcomes with mobility, productivity, variation, and duration of activity due to pain. [Ms. Thomas] has focused on using her limited physical ability to be more productive with the time and abilities she does have while managing pain. [Ms. Thomas] has a limited to poor prognosis for her pain."

91.     In a signed reply dated that same day, Ms. Thomas's specialist pain provider, NP Ernst-Amador, reiterated her prior position that Ms. Thomas could not perform a range of light work with cognitive or behavioral limitations, noting that Ms. Thomas has

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

"lumb[ar] laminectomy [and] fusion of hardware," and that she experiences "radicular pain making sitting[,] standing or walking difficult for [greater than] 5-10 [minutes.]"

92.     In a signed reply to that same Unum letter, Dr. Cheng agreed Ms. Thomas could not perform work within those restrictions and limitations, noting that she suffered from "severe uncontrolled lumbar spine disease [and] uncontrolled depression/anxiety/[post-traumatic stress disorder] issues."

93.     Unum continued to ignore evidence of Ms. Thomas's physical disability and was persistent in its efforts to dig up information to support the termination of benefits, authorizing three days of surveillance of Ms. Thomas's household in October 2019.

94.     The investigators did not observe Ms. Thomas for the entire duration despite staking out her house for three days.

95.     While Unum observed no activity on surveillance, it was undeterred, sending yet another batch of letters to Ms. Thomas's treating physicians dated January 21, 2020— only a few short months since Unum last sought Ms. Thomas's provider's opinions regarding her functionality.

96.     In her reply transmitted to Unum on January 24, 2020, NP Ernst-Amador, again stated Ms. Thomas could not perform sedentary work.

97.     Ms. Ernst-Amador explained, "[Ms. Thomas] has failed lumbar fusion sitting too long would cause undue pain."

98.     In response to the same letter from Unum, Dr. Reed, Ms. Thomas's psychologist, answered that Ms. Thomas was unable to perform sedentary work on a full-time basis.

99.     Dr. Reed answered that Ms. Thomas had cognitive restrictions and limitations based on her physical conditions.

100.    In an attached statement, Dr. Reed noted Ms. Thomas was unable to perform sedentary work on a full-time work basis due to "heightened pain" resulting from sitting or walking for even limited periods.

-11-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

101.    Dr. Reed indicated she had personally "witnessed [Ms. Thomas's] pain increase during counseling sessions due to sitting and her then reaction to the pain with decreased focus and increased fatigue."

102.    Dr. Reed noted, "Carol has difficulty getting ready to leave the house and is in such pain that she is unable to do more than one errand/appointment when leaving the house."

103.    Dr. Reed further explained Ms. Thomas has cognitive restrictions and limitations due to heightened pain.

104.    Dr. Reed stated for the second time that Ms. Thomas's behavioral symptoms were improving, and "[Ms. Thomas] is now[] focusing on pain management and her self-concept with the change of her abilities and limitations in life."

105.    In a signed reply dated January 30, 2020, Dr. Cheng also agreed Ms. Thomas could not perform sedentary work due to "chronic back pain issues [that] prevent any extended sitting/standing positions."

106.    Unum, however, refused to properly credit the opinions of Ms. Thomas's treating physicians, instead referring her claim to be reviewed by non-examining peer review physicians.

107.    On April 10, 2020, peer review physician Richard Maguire, M.D. asserted, "[T]he medical information reviewed does not document findings from a physical condition standpoint that would currently preclude [Ms. Thomas] from performing the full-time demands of an alternate seated level work capacity requiring perform [*sic*] lifting, carrying, pushing, pulling up to 10 pounds, mostly seated and brief periods of standing and walking as well as cognitive demands of directing, controlling or planning activities of others making judgments and decisions; and dealing with people."

108.    Unum forwarded Dr. Maguire's response to Dr. Cheng, who in a signed reply dated March 27, 2020 disagreed with Dr. Maguire's conclusions, noting the main issues precluding full-time work capacity are "severe back pain and sedation effects from [Ms.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Thomas's] medication. [Ms. Thomas] would not be able to work for extended periods of time."

109.   Unum forwarded the claim to its Designed Medical Officer, Jamie Lewis, M.D., who concurred with Dr. Maguire's opinion.

110.   A few days later, in a letter dated April 21, 2020 Unum terminated Ms. Thomas's benefits (the "Denial") on the basis her benefits under the Plan's mental-nervous limitation had been exhausted.

111.   In the Denial, Unum exclusively relied on the opinions of its own reviewers.

112.   An internal Unum note from the same day indicated that Ms. Thomas had previously been notified of her right to request an independent medical examination on a March 2018 letter from two years prior.

113.   Any language that Ms. Thomas was entitled to request such an examination was omitted from the Denial.

114.   On October 15, 2020, through counsel, Ms. Thomas appealed Unum's Denial (the "Appeal").

115.   With the Appeal, Ms. Thomas submitted compelling objective evidence of her ongoing physical Disability, including an independent functional capacity examination ("FCE"), an independent vocational consultant's report, and updated medical records.

116.   The independent consultant who performed the FCE concluded Ms. Thomas could not perform her past work or any other work, "including all types of SEDENTARY physical demand work . . . ."

117.   The FCE was based upon a rigorous battery of tests including an in-depth physical examination and walking, agility, grip strength, keyboard speed, and lifting and carrying tests.

118.   The consultant also reviewed Ms. Thomas's extensive medical history prior to completing the report.

-13-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

119.    In the independent vocational report, the consultant noted Ms. Thomas's "profound physical limitations, including chronic back pain that are exacerbated, . . . by extended periods of sitting and standing."

120.    The vocational consultant also concluded that Ms. Thomas's physical limitations would preclude work.

121.    The updated medical records Ms. Thomas submitted with the Appeal included diagnostic imaging of the spine showing levoscoliosis and cervical anterolisthesis.

122.    An April 2020 MRI noted Ms. Thomas's "L2 fracture has caused some progression of scoliosis and may be causing some foraminal stenosis."

123.    Instead of duly considering this objective evidence, Unum again referred Ms. Thomas to an on-site physician, Scott B. Norris, M.D., who opined no physical restrictions and limitations that would preclude sedentary work.

124.    On November 24, 2020, Unum issued its final decision upholding the termination of benefits (the "Final Denial").

125.    After the Final Denial, Genex—the third-party vendor Unum assigned to represent Ms. Thomas in her ongoing Social Security matter—notified Unum of Ms. Thomas's fully-favorable Social Security disability award.

126.    The severe impairments identified by the Administrative Law Judge ("ALJ") for the Social Security Administration included degenerative disc disease of the lumbar spine, status-post fusion; left shoulder SLAP lesion repair; and obstructive sleep apnea.

127.    The ALJ concluded that Ms. Thomas could not perform her past relevant work and that "no jobs exist in significant numbers in the national economy that [Ms. Thomas] can perform."

128.    Still, Unum took no action to re-open Ms. Thomas's claim or reconsider its final decision, despite this evidence.

129.    Ms. Thomas cannot perform the material duties of her Regular Occupation or Any Occupation and, therefore, comes within the definition of Disability under the Plan.

-14-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7ᵗʰ Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

130.    Ms. Thomas continues to be Disabled as a result of her physical medical conditions.

131.    Ms. Thomas exhausted her administrative remedies and timely filed this lawsuit.

## COUNT I
### (Recovery of LTD Plan Benefits)

132.    All other paragraphs are incorporated by reference.

133.    The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

134.    The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Thomas is no longer Disabled under the terms of the Plan.

135.    Ms. Thomas continues to be physically Disabled from working in her Regular Occupation or Any Occupation.

136.    Ms. Thomas has claimed the benefits under the Plan to which she is entitled.

137.    Ms. Thomas reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that she would receive benefits under the Plan until she reaches age 65, or until she was no longer Disabled.

138.    Despite the coverage of Ms. Thomas' Disability, Unum improperly terminated Ms. Thomas' LTD benefits in breach of the Plan and ERISA.

139.    Unum repeatedly ignored compelling evidence of Ms. Thomas's ongoing physical Disability, including the several opinions of her treating physicians who opined Ms. Thomas is physically Disabled.

140.    Unum's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

141.    Although the Policy states Unum has "discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy[,]" under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator,

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

142.    On information and belief, the Plan does not properly confer discretion to Unum in writing, and thus, Unum does not have discretion under the terms of the Plan.

143.    Even if The Committee properly delegated discretionary authority to Unum, in light of Unum's wholesale and flagrant procedural violations of ERISA, Ms. Thomas should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

144.    Instead of evaluating a participant's eligibility based on the applicable Plan language and medical evidence, Ms. Thomas is informed and believes that Unum makes claims decisions based on the claims resources and financial risk it faces on certain claims.

145.    Unum's persistent refusal to acknowledge Ms. Thomas's medical evidence and the opinions of her treating providers is evidence of its goal-oriented claims decisions.

146.    Here, Unum ignored clear evidence showing Ms. Thomas' physical medical condition was Disabling.

147.    Unum denied Ms. Thomas' claim based on the opinions of its own physicians who never examined or even spoke with Ms. Thomas or her treating providers.

148.    Although Unum's physicians attempted to "confer" with Ms. Thomas's providers regarding the nature and extent of her restrictions and limitations, their opinions were repeatedly ignored.

-16-

149. Unum failed to conduct a full and fair review and misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased medical reviews provided by in-house medical consultants.

150. Unum relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Thomas's benefits.

151. Unum abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Unum ignored the inaccuracies or created new reasons for denial.

152. Upon information and belief, Unum tainted its medical file reviewers by giving the reviewers inaccurate information regarding Ms. Thomas, while also failing to provide its reviewers with all of the relevant evidence.

153. Upon information and belief, Unum provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

154. Upon information and belief, Unum used in-house reviewers in evaluating Ms. Thomas's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Thomas' benefits.

155. The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation, or by mischaracterizing evidence.

156. Unum routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

157. In terminating Ms. Thomas's LTD benefits, Unum disregarded evidence that Ms. Thomas' physical conditions had not changed or improved.

158. In fact, Ms. Thomas's medical evidence illustrates the opposite—that Ms. Thomas's physical condition has only worsened in recent years.

159. Unum closed the door on this evidence, which is not consistent with a full and fair review.

-17-

160.    Unum engaged in other procedural irregularities, which it did to serve its own financial best interests.

161.    On information and belief, Unum engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

162.    Unum intentionally gathered evidence to stack the deck in its favor and against Ms. Thomas.

163.    Ms. Thomas alleges upon information and belief that Unum has a parsimonious claims handling history.

164.    Unum failed to conduct a "meaningful dialogue" regarding Ms. Thomas's claim.

165.    Unum repeatedly solicited Ms. Thomas and her providers for information regarding her physical conditions only to routinely ignore that evidence or disregard it.

166.    Unum failed to grant Ms. Thomas an opportunity to request an IME prior to the Denial because it had previously advised her of her right to under the Policy in a letter from two years prior.

167.    Under the de novo standard of review, to be entitled to benefits, Ms. Thomas need only prove by a preponderance of the evidence that she is Disabled.

168.    Even under the abuse of discretion standard of review, Unum abused its discretion, because its decision terminating Ms. Thomas's disability benefits was arbitrary and capricious and caused or influenced by Unum's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

169.    Plaintiff is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Unum's reviewing physicians', its employees', and its

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Thomas's LTD claim.

170.    On information and belief, Unum's termination of Ms. Thomas's claim is tied directly to an aggressive effort by Unum to limit its liability on LTD insurance claims in early 2020.

171.    In the first quarter of 2020, Unum had suffered a $120 million net income loss compared to the corresponding quarter from the year prior.

172.    The Maine Bureau of Insurance concluded that Unum's statutory reserves were deficient by $2.1 billion at the end of 2018, necessitating a plan to "phase-in" hundreds of millions of dollars to ensure its statutory reserve obligations were met.

173.    Unum's group disability business experienced a nearly 8% decrease of adjusted operating income and a 15% decrease in sales compared to the first quarter of the prior year.

174.    Unum only suffered a group disability benefit ratio loss of 1.5% "due primarily to favorable claim recovery experience in our group long-term disability product line, partially offset by higher claims incidence in both our group long-term and short-term disability product lines." *Pandemic Cited As Unum Faces Major Income Drop, $2.1 Billion Reserve Deficiency At Maine Operation*, May 6, 2020, https://www.chattanoogan.com/2020/5/6/408632/Pandemic-Cited-As-Unum-Faces-Major.aspx (Last accessed March 9, 2021).

175.    On information and belief, as a result of Unum's deficient claims reserves and revenue and profitability, it has engaged in aggressive LTD claim termination efforts companywide.

176.    On information and belief, Ms. Thomas was a victim of Unum's corporate efforts to drive profitability.

177.    Ms. Thomas is informed and believes that Unum's conduct in this case would violate the terms of the 2005 California Settlement Agreement.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7ᵗʰ Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

178.     Under the de novo standard of review, Ms. Thomas is entitled to discovery regarding, among other things, the credibility of Unum's medical reviews and Unum's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

179.     Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Thomas is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

180.     Ms. Thomas is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her Disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

181.     Pursuant to 29 U.S.C. § 1132(g), Ms. Thomas is entitled to recover her attorneys' fees and costs incurred herein.

182.     Ms. Thomas is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

## COUNT II
### (Breach of Fiduciary Duty)

183.     All other paragraphs are incorporated by reference.

184.     Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

185.     Unum is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Thomas.

-20-

186.    Under 29 U.S.C. § 1104(a), Unum is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man or woman acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

187.    Under ERISA, which is founded in trust principles, Unum is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

188.    In multiple ways throughout the administration of Ms. Thomas's claim, Unum breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

189.    Unum's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Unum's claims handling was discharged imprudently and caused Ms. Thomas serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

190.    To the extent that Unum's denial of benefits caused Ms. Thomas harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

191.    On information and belief, Unum instructs and/or incentivizes certain employee(s) to terminate fully-insured LTD claims and appeals based on bias or its financial interests.

192.    Ms. Thomas is informed and believes that Unum's employees are trained in administering claims in the best interests of Unum, not Plan participants.

193.    Unum demonstrated bias and malice against Ms. Thomas through its employees. Instead of fully and fairly reviewing the medical evidence, Unum unreasonably denied Ms. Thomas's claim based on unreliable evidence, such as the aforementioned medical consultant reviews.

194.    Unum's failure to act prudently and in the best interests of Ms. Thomas is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Unum's conduct as it relates to Ms. Thomas' claim.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

195.     Ms. Thomas is informed and believes that Unum has targeted claims under the Plan, including Ms. Thomas's claim, which is a breach of fiduciary duty.

196.     On information and belief, Unum breached its fiduciary duty to Ms. Thomas by terminating her claim in an effort to avoid its financial liability.

197.     Based on the facts of this case, Ms. Thomas has "other equitable relief" available to her in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Ms. Thomas whole for her losses from Unum's breaching conduct.

198.     The Court has broad discretion to fashion appropriate relief to make Ms. Thomas whole and should mold the relief necessary to protect the rights of the participants.

199.     Ms. Thomas is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

200.     Ms. Thomas is entitled to enjoin any act or practice by Unum that violates ERISA or the Plan, or to seek other appropriate equitable relief that is traditionally available in equity.

201.     Unum was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Thomas's benefits for its own profit.

202.     Unum engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

203.     Unum acted with malice and in bad faith against Ms. Thomas, which constitutes a violation of its fiduciary obligations.

204.     ERISA "does not elsewhere adequately remedy" the injuries caused to Ms. Thomas by Unum's breach of fiduciary duty violations.

205.     As a direct and proximate result of the breaches of fiduciary duty, Ms. Thomas suffered actual, significant financial harm and has incurred financial expense.

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

206.   Ms. Thomas is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

207.   Pursuant to 29 U.S.C. § 1132(g), Ms. Thomas is entitled to recover her attorneys' fees and costs incurred herein.

**WHEREFORE**, on all claims, Ms. Thomas prays for entry of judgment against Defendant as set forth in this Complaint, which includes:

A.   All past LTD benefits under the terms of the Plan;

B.   Clarifying and determining Ms. Thomas' rights to future benefits under the terms of the Plan;

C.   For any other benefits Ms. Thomas may be entitled to receive under the Plan due to her Disability;

D.   All other equitable relief that is proper as a result of Unum's breaches of fiduciary duties;

E.   An award of Ms. Thomas' attorneys' fees and costs incurred herein;

F.   An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.   For such and further relief as the Court deems just, equitable, and reasonable.

Dated April 2, 2021.

RONSTADT LAW, PLLC


By: *s/ Erin Rose Ronstadt*
    Erin Rose Ronstadt
    Clayton W. Richards
    *Counsel for Plaintiff*